WILLIAM H. BARTLETT *et al.* Appellants, *vs.* THE FIRST NATIONAL BANK OF CHICAGO, Appellee.

*Opinion filed December 21, 1910.*

1. BILLS AND NOTES—*general rule as to right of drawee to recover if endorsement is forged.* Where a drawee pays a draft to an endorser who derives title to the draft through a forged endorsement, he may, as a general rule, recover the money back.

2. SAME—*when a bank does not derive title to draft through forged endorsement.* Where a grain company's agent draws drafts on the company payable to real persons or bearer, not intending that the payees should ever have possession of the drafts or any interest therein, or that they should endorse them, but intending to endorse such names himself, the payees are, in law, fictitious persons, and the drafts, being, in law, payable to bearer, are transferable by delivery, so that a bank which pays them may enforce them against the drawee without having to claim title through the agent's forged endorsement.

3. SAME—*rule where one of two innocent persons must suffer loss by wrongful act of third party.* Where one of two innocent persons must suffer loss by reason of the wrongful act of a third party, the one who has made it possible, by his own negligence, for the third party to commit the wrongful act must stand the loss.

4. SAME—*when grain company, and not bank, must stand loss of agent's dishonesty.* A grain company which knowingly allows its agent, although forbidden to do so, to draw drafts on the company payable to farmers who had delivered grain and endorse the names of the payees himself, thereby putting it in the power of the agent to secretly appropriate the proceeds of drafts drawn by

him in favor of real persons or bearer for fictitious purchases of grain and endorsed by him in their names, must, as against a bank having no notice of the facts, stand the loss resulting from the agent's misconduct.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding.

GEORGE P. MERRICK, (LOUIS M. GREELEY, of counsel,) for appellants:

Appellants were estopped, after paying these bogus drafts, to deny Walsh's authority to draw them. Estoppels are mutual, and appellee having received payment of them is likewise estopped to deny these drafts are other than what they purport to be,—*i. e.,* drafts payable to the real persons therein named, whose genuine endorsements are necessary to negotiation. *Bank* v. *Bank,* 152 Ill. 296.

The drawee of a draft or bill of exchange may recover the amount paid thereon from the party collecting the same, where any of the endorsements under which the party collecting derived his title to the draft turn out to be forgeries. *Bank* v. *Pease,* 168 Ill. 40; *Bank* v. *Bank,* 152 id. 296; *United States* v. *Bank,* 6 Fed. Rep. 852; *Bank* v. *Bank,* 1 Hill, 287; 2 Morse on Banks and Banking, (4th ed.) sec. 474; Zane on Banks and Banking, 346; *Insurance Co.* v. *Bank,* 60 N. H. 442; *United States* v. *Bank,* 141 Fed. Rep. 209; 2 Daniel on Neg. Inst. (5th ed.) sec. 1369.

A bank collecting or endorsing a draft or check warrants the genuineness of all prior endorsements of the draft or check. *United States* v. *Bank,* 214 U. S. 302; *White* v. *Bank,* 64 N. Y. 316; *Bank* v. *Robbins,* 71 Kan. 748; *Bank* v. *Bank,* 152 Ill. 296.

The names of the payees in the drafts in question were those of real persons living in or near Reddick. The fact

that Walsh, the swindler, never intended these real persons to take these drafts, and that he never delivered the drafts to those persons named as payees but fraudulently retained the drafts himself, forged the names of the payees thereon and realized on the drafts for his own benefit, does not make these drafts payable to fictitious payees as against appellants or in favor of appellee, both of whom supposed the payees to be the real persons named and their endorsements to be genuine. The secret felonious intentions of a criminal not a party to the paper to use real names fictitiously cannot affect the appellants. *Bank* v. *Bank,* 152 Ill. 296; *Bank* v. *Bank,* 193 N. Y. 26; *Harmon* v. *Bank,* 153 Mich. 73.

In order that negotiable paper may be deemed payable to a fictitious payee (and so become "bearer paper") as to any party to the paper, that party must have known that the payee was fictitious. *Bank* v. *Bank,* 152 Ill. 296; *Jordan-Marsh Co.* v. *Bank,* 201 Mass. 397; *Boles* v. *Harding,* 201 id. 103; *Armstrong* v. *Bank,* 46 Ohio St. 512; *Bank* v. *Bank,* 193 N. Y. 26; *Shipman* v. *Bank,* 126 id. 318.

H. K. & H. H. Wheeler, Custer & Cameron, and Timothy F. Mullen, for appellee:

It is the duty of one who has paid money on a forged endorsement to give prompt notice, on discovery of the forgery, to the person from whom he expects to recover the money paid. *United States* v. *Bank,* 45 Fed. Rep. 163; *Schroeder* v. *Harvey,* 75 Ill. 638; *McNeely Co.* v. *Bank,* 221 Pa. 588.

If delay in giving notice to the person entitled to it, after discovery of the forgery, deprives him of the opportunity to proceed promptly against those liable over to him, it takes from him a valuable right, which of itself is a damage. *McNeely Co.* v. *Bank,* 221 Pa. 588; *Bank* v. *Morgan,* 117 U. S. 96; *Robb* v. *Voss,* 155 id. 13.

The right to recover money paid upon a forged endorsement is conditioned on notice and "demand within a reasonable time after the discovery of such forgery." *Bank* v. *Ricker,* 71 Ill. 439; *Bank* v. *Bank,* 152 id. 296; 2 Daniel on Neg. Inst. secs. 1364, 1372; *Bank* v. *Bank,* 1 Hill, 287.

If the payees' endorsements were forgeries the bank was entitled to the drafts, in order to pursue its remedy over against the prior endorser as well as against the forger. *Simms* v. *Clark,* 11 Ill. 137.

Under such circumstances the appellants, on discovering the forgeries, were bound to make prompt tender of the drafts to the bank or lose their remedy against it. *Reddington* v. *Woods,* 45 Cal. 406; *Rick* v. *Kelly,* 30 Pa. St. 527.

Failure to return the drafts promptly on discovery of the forgery is not excused by the bank's letter written fifteen months later, complaining of the previous *laches. Bank* v. *Bank,* 182 Ill. 380.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action in assumpsit commenced by Bartlett, Frazier & Carrington against the First National Bank of Chicago, in the municipal court of Chicago, to recover the amount of 135 drafts drawn by the appellants, by their agent, R. L. Walsh, upon themselves, to the order of persons residing in the vicinity of Reddick, in Kankakee county, during the year 1906, and fraudulently endorsed by said R. L. Walsh in the names of the payees named in said drafts and paid to R. L. Walsh by the State Bank of Reddick, and to the State Bank of Reddick by the First National Bank of Chicago, and to the First National Bank of Chicago by the appellants. The declaration consisted of the common counts, and the general issue was filed, and upon a trial the jury returned a directed verdict in favor of the defendant, upon which the court rendered judgment, after overruling a motion for a new trial, in favor of the

defendant for costs. Said judgment was affirmed, on appeal, by the Appellate Court for the First District, and said court having granted a certificate of importance, a further appeal has been prosecuted to this court.

It appears from the record that Bartlett, Frazier & Carrington were engaged in the buying of grain in the city of Chicago and at numerous places in the country; that in 1904 they were running an elevator at Reddick; that R. L. Walsh was the manager of the Reddick elevator; that he bought grain from the farmers residing in that vicinity and paid them for their grain by delivering to them drafts drawn upon blanks in the following form, which were furnished R. L. Walsh by Bartlett, Frazier & Carrington:

"No. ....... BARTLETT, FRAZIER & CARRINGTON. $.......
    "Pay to the order of .....................................
........ Dollars for ...... bushels ...... Lbs. of ..........
                          BARTLETT, FRAZIER & CARRINGTON,
                          By.....................Agent.
To Bartlett, Frazier & Carrington, Chicago, Illinois."

The blanks were filled up by R. L. Walsh with the farmers' names, the amount due them for grain and the kind of grain purchased. The drafts were cashed by the State Bank of Reddick, and by that bank forwarded to the First National Bank of Chicago, and by that bank collected of Bartlett, Frazier & Carrington. In the year 1905, to accommodate the farmers and to meet competition, R. L. Walsh would fill out the drafts, as above indicated, for grain and pay the farmers for their grain in cash, and then, without authority, endorse the drafts with the farmers' names and obtain the amounts of the drafts from Bartlett, Frazier & Carrington by putting the drafts through the banks. There is no evidence that the banks knew R. L. Walsh was endorsing the drafts without authority from the payees, but Bartlett, Frazier & Carrington must soon have received notice of the fact that R. L. Walsh was endorsing the drafts in the names of the payees and without

authority, as on September 8, 1905, they wrote R. L. Walsh the following letter:

"CHICAGO, *Sept. 8th, 1905.*

"*Mr. R. L. Walsh, Reddick, Illinois:*

"DEAR SIR—Yours of the 7th inst. at hand. In reference to your endorsing the farmer's name, we do not approve of this, as we do not consider it businesslike, unless you have direct, written authority from the farmer to do so. When you want to draw money from the bank yourself to pay currency to the farmer, make the check read, 'Pay to the order of currency account,' and then give the name of the farmer; then when you draw the money at the bank, endorse your name, but not the farmer's name, on the back. This will make our records here show plainly to whom the money should be charged, and under our surety bond we will be protected in case any of our agents make a wrong use of the money.

"Very truly yours,

Dictated by H. J. P.                    B., F. & C."

On the same day appellants wrote the State Bank of Reddick, which had been in the habit of cashing grain drafts drawn by R. L. Walsh, the following letter:

"BARTLETT, FRAZIER & CARRINGTON,

*Chicago, Sept. 8, 1905.*

"*State Bank of Reddick, Reddick, Illinois:*

"DEAR SIR—In future will you kindly cash drafts drawn on us which read, 'Pay to the order of currency account,' (name of farmer to be inserted,) and then endorsed on the back by Mr. R. L. Walsh, our agent at Reddick, and, of course, signed by him? This will enable Mr. Walsh to draw all the currency necessary where the farmers wish payment in currency, and at the same time it will keep our records straight.

"Yours very truly,

Dictated by H. J. P.                    B., F. & C."

There is nothing in the record up to this time to show that R. L. Walsh had been guilty of any dishonesty in endorsing the names of the payees in the drafts. In the month of May, 1906, there was a shortage in the oats which should have been on hand in the Reddick elevator, and the appellants sent their agent at Kankakee to Reddick to investigate the business at this point, and R. L. Walsh seems to have been able to satisfy the appellants that he was honestly conducting their business, although it clearly appeared

he had disobeyed their instructions by continuing to draw drafts to the order of the farmers from whom he bought grain and endorsing them in their names without authority from the farmers. No notice of the manner in which R. L. Walsh had been conducting the business of the appellants was given to the State Bank of Reddick or the First National Bank of Chicago, but apparently so soon as the appellants became satisfied that the money drawn upon said drafts so endorsed was being used to pay for grain which they were receiving, they seem to have become satisfied with the method in which R. L. Walsh was doing their business at Reddick, as on May 29, 1906, the appellants wrote R. L. Walsh the following letter:

"BARTLETT, FRAZIER & CARRINGTON, *Western Union Building.*
CHICAGO, *May 29th, 1906.*
"*Mr. R. L. Walsh, Reddick, Illinois:*
"DEAR SIR—Your favor of the 28th inst. at hand in reference to the manner in which you have conducted our business at Reddick. As we have written you before, we think you have been rather careless in the manner in which you have written checks. It is a very bad habit to write your currency checks or large checks to your own order. To speak plainly, it puts it in a man's power to use them if he wishes to do so, and where there is an opportunity the temptation, of course, is much greater, you must remember. We have had one or two other agents who have gone wrong in the last five or six years and generally in some such manner. We felt that an investigation would be a good thing, and you certainly must feel a good deal better that one has been made and that everything, as far as the writer knows, has turned out to show that you have been perfectly honest in your management of the affairs. We have a few other agents who sometimes advance money to farmers, but they always make the note to themselves, and when the money is returned insist on the farmer giving him a check payable to his own order, so as to keep their own personal affairs and funds entirely separate from the funds of the firm.

"You speak about the grain shortages, which certainly were entirely too large, but we trust you have taken such precaution now that no such large shortage will occur again. We trust you will continue to do the largest business at Reddick.

"Very truly yours,
Dictated by H. J. Patten.     B., F. & C."

In November, 1906, it was discovered by the appellants that R. L. Walsh, by means of issuing drafts without receiving any grain therefor and endorsing them in the names of the payees and procuring the cash thereon from the State Bank of Reddick and passing them through the First National Bank of Chicago, had obtained some $12,500 in cash, which he had converted to his own use.

The appellants base their claim of liability against the First National Bank of Chicago upon the contention that the endorsements of the names of the farmer payees upon the drafts by R. L. Walsh were forgeries, and that when those drafts were presented by the First National Bank of Chicago to the appellants for payment the First National Bank of Chicago guaranteed such endorsements to be true and genuine, and as the amounts thereof were paid to the First National Bank of Chicago by the appellants in consequence of said forged and fraudulent endorsements, the appellants are entitled to recover from the First National Bank of Chicago the amounts paid to said bank by them upon said drafts. It is undoubtedly the general rule that when a drawee pays a draft to an endorser who derives title to the draft through a prior forged endorsement he may recover back the money so paid. (*First Nat. Bank* v. *Northwestern Nat. Bank,* 152 Ill. 296.) We think, however, the undisputed evidence in this record shows that the negligence of the appellants was so gross that they ought not, as a matter of law, to be permitted to recover from the First National Bank of Chicago the amounts of the drafts upon which the names of the farmer payees were forged by R. L. Walsh, who was the agent of the appellants. The appellants knew their agent, R. L. Walsh, was drawing drafts against them with which to obtain money from the banks to pay for grain which he was buying upon their account, and that Walsh was wrongfully endorsing the names of the payees in whose favor said drafts were drawn, upon said drafts. They knew that Walsh was short

upon grain which he had purchased for them, and they also knew that Walsh persisted in drawing drafts and endorsing them in the names of the payees after they had forbidden him to do so. While in possession of this information they retained him in their employ, and permitted him to continue drawing and endorsing said drafts without informing the banks who were handling such drafts of the fact that Walsh was wrongfully endorsing those drafts.

When one of two innocent parties must suffer loss by reason of the wrongful acts of a third party, the rule is almost universal that the party who has made it possible, by reason of his negligence, for the third party to commit the wrong must stand the loss. In this case, if the appellants had notified the banks who were handling said drafts that R. L. Walsh was forging the names of the farmer payees in order to get the money on the said drafts from the banks, the loss which was sustained by the passing of said drafts would never have occurred. This they did not do, but remained quiet so long as they thought they were getting the benefit of the money that was paid on said drafts, and only complained when they learned that their agent, Walsh, was taking advantage of the position in which they had placed him by his appointment as their agent, with authority to draw drafts, by drawing drafts to farmers who had not delivered grain, and endorsing the names of such farmer payees upon the drafts and drawing the money from the banks thereon and appropriating the same to his own use. We think it clear if the appellants enjoyed the benefits which accrued to them from the business done by Walsh so long as it was done honestly, that when Walsh became dishonest and appropriated the money which he drew by reason of forged endorsements they should suffer the loss which followed his rascality, and not be permitted to unload such loss upon the banks that innocently handled said drafts.

The drafts drawn by R. L. Walsh in the name of the appellants against themselves were all made payable to some person who resided near Reddick, or bearer, and in the sense that there were such individuals as payees the payees named in the drafts were not fictitious persons. At the time, however, Walsh drew said drafts he did not intend that the persons whose names he inserted as payees in said drafts should have any interest in said drafts, or that said drafts should ever be delivered to said payees, or that said payees should endorse said drafts in order to receive payment therefor or for the purpose of negotiating the same. In the eye of the law, therefore, the payees named in said drafts were not *bona fide* payees but mere fictitious persons. Said drafts were therefore, in law, payable to bearer, and were transferable, therefore, by delivery, and upon their receipt by the appellee payment thereof could be enforced against the appellants by the First National Bank of Chicago without claiming through the said forged endorsements but as the holders of negotiable paper made payable to bearer. In *Phillips* v. *Mercantile Nat. Bank,* 140 N. Y. 556, (23 L. R. A. 584,) the cashier of the Sumpter Bank drew drafts in its name against the Mercantile Bank to the order of various persons with whom the Sumpter Bank did business. He then endorsed the drafts in the names of the payees to the order of certain stock brokers, who collected them from the Mercantile Bank. It was held that the payees named in the drafts were in law fictitious persons, and the drafts, in legal effect, were payable to bearer. In *Snyder* v. *Corn Exchange Nat. Bank,* 221 Pa. 599, Snyder was a depositor in the bank and sued to recover the amount of certain checks alleged to have been wrongfully paid and charged to his account. The checks were drawn by a clerk employed by the plaintiff to the order of one Charles Niemann. The clerk then endorsed the name "Niemann" upon the checks and delivered them to R. M. Miner & Co., bucket-shop

men.  The name Charles Niemann was used by the clerk as that of a fictitious person.  The court said: "The intent of the drawer of the check in inserting the name of the payee is the sole test of whether the payee is a fictitious person, and the intent of the drawer of these checks, as attorney for the appellant, must, as just stated, be regarded, as against the bank upon which they were drawn, as the intent of the appellant himself."  The First National Bank did not, therefore, make out its title to said drafts through a forged endorsement, and appellants could not, therefore, recover back the money paid to the bank on said drafts.

Numerous other grounds are urged in support of the judgments of the trial and Appellate Courts, but the two grounds herein considered are so conclusive against the right of the appellants to recover, upon the undisputed evidence, that we do not think it necessary to consider the other grounds urged in the briefs.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*