DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1919. :

---

## American Hominy Company, Appellee, v. National Bank of Decatur, Appellant.

1. BILLS AND NOTES, § 86*—*when drafts are payable to bearer.* Where one, authorized by a milling company to buy grain for it and to draw the company's drafts upon itself for grain bought and not shown to have been without authority to draw bearer paper, settled grain accounts by charging off his personal credits against the sellers and issued drafts on the company in favor of the sellers but without any intention that the latter should have any interest in the drafts or that the drafts should be' delivered to or indorsed by them, and he himself disposed of ,such drafts by indorsement, held that such drafts were payable to bearer within the meaning of Negotiable Instruments Law, sec. 9 (Hurd's Rev. St. 1917, ch. 98, sec. 27, J. & A. ¶ 7648).

2. BANKS AND BANKING, § 154*—*when collecting bank does not warrant genuineness of indorsements on drafts payable to bearer.* A collecting bank does not warrant the genuineness of indorsements on drafts payable to bearer by presenting such drafts for payment.

Appeal from the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding. Heard in this court at the October term, 1918. Reversed with finding of facts. Opinion filed July 9, 1919. Modified and refiled October 14, 1919.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

LE FORGEE, BLACK & SAMUELS, REDMON, HOGAN & REDMON and MOSES, ROSENTHAL & KENNEDY, for appellant; WALTER BACHRACH and H. J. DARBY, of counsel.

VAIL, POGUE & ALLEN, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

The American Hominy Company, appellee, procured a judgment against the National Bank of Decatur, appellant, in the Circuit Court of Macon county, in an action of assumpsit in the sum of $2,359.63, to reverse which this appeal is prosecuted.

The declaration under which the case was tried consists of the common counts and six special counts. It is averred in the first special count that on January 7, 1915, appellant presented to appellee at Decatur for payment appellee's certain draft on itself drawn by its agent, John C. Meyer, at Garber, Ford County, Illinois, in the following words and figures, to-wit:

"Suffern-Hunt Mills                           No. 2311.
  Branch° American
    Hominy Co.          Garber, Ill., Dec. 31-1914.
White Corn Products.
Pay to the
Order of C. J. Heckens..................$749.60-100
Seven Hundred Forty-nine and 60-100.......Dollars
For 1208.44 Bushels white corn   At 62 per Bu.
To Suffern-Hunt Mills)
          Decatur, Illinois   (Signed)   John C. Meyer,
                                                Agent."

That at the time of said presentment said draft bore upon the back thereof the indorsement of one C. J. Heckens, the payee named therein, together with certain other indorsements; and whereas said Meyer, at the time he drew said draft as such agent of appellee, and at the time of the presentment of said draft as

aforesaid, was authorized by appellee to draw appellee's drafts upon itself and to deliver the same to the payee named therein in payment only for grain in the amount and at the prices named on the face of such drafts, or in payment of supplies or wages noted upon the faces of such drafts, and was not then authorized to draw any drafts upon appellee in said form or otherwise, payable to bearer, or in payment for anything other than grain in the manner aforesaid, nor to deliver the same to any persons other than the persons to whom moneys were then due from appellee for grain purchased and delivered or to be delivered to appellee at said elevator in Garber, save only for supplies and wages, which last-named drafts also were then required to show upon their faces for what purpose they were drawn, issued and delivered; and whereas said draft above mentioned was not drawn and delivered by said Meyer, as agent as aforesaid, to the payee named therein in payment of grain nor for any other purpose, but on the contrary the name of the payee was, prior to its presentment, indorsed in writing on the back thereof by some person other than said payee and without the consent, authorization, knowledge or ratification of said payee or appellee, by reason whereof appellee could not and did not, at the time of the presentment of said draft as aforesaid, lawfully trace its title to the same through said payee or otherwise; and whereas afterwards plaintiff, who then did not know that the name of the payee upon said draft presented as aforesaid had been forged, nor that the same had not been drawn nor delivered to said payee in payment for the grain in said draft mentioned, nor that appellant did not then have lawful title to said draft, and who then believed that said draft had been paid by said Meyer, as agent as aforesaid, and drawn and delivered to said Heckens in payment of grain purchased by him for appellee, then and there paid to appellant the amount of said draft, and

although appellant then knew or should have known that the name of the payee then indorsed upon the back of said draft was forged, and that its payment by appellant was without consideration, appellant then and there received and has retained said moneys of appellee, the same in the amount of said draft then paid by appellee to appellant; that appellant then and there became liable to repay said moneys to appellee, etc.

Special counts two, three and four are in substantially the same language except that they declare upon three other drafts drawn in the same form ostensibly for the payment of grain and payable respectively to the order of Henry Boettger, $626.36; John M. Heckens, $706.47; and Andrew Molck, $380.25.

The fifth special count declares on all the drafts together and avers that appellant by presenting said drafts for payment thereby vouched and warranted to appellee that the indorsements in writing of the names of the respective payees upon the backs of said respective drafts were the genuine indorsements of such payees.

The sixth special count declares upon all the drafts and avers that appellee paid the same under a mistake of fact.

The proofs show that the National Bank of Decatur received the drafts in question for the purpose of collection only; that it presented them to appellee who voluntarily paid the same; that appellant then remitted the money to the persons or blanks from whom or which it had received the drafts for collection and that appellant had no interest of any kind in the transaction, except merely as a collection agency. The American Hominy Company is a corporation engaged in the business of buying, selling and milling grain and has many branches or branch offices throughout the country. Its office for the central part of Illinois is located at Decatur and is operated under the name of Suffern-Hunt Mills and its various agents and

468        APPELLATE COURTS OF ILLINOIS.

American Hominy Co. v. Nat. Bk. of Decatur, 215 Ill. App. 464.

offices in the vicinity of Decatur operate under instructions and direction from the Suffern-Hunt Mills. Among other elevators owned and operated by appellee was one located at Garber, a small station in Ford county. For about 15 years John C. Meyer had been the agent for appellee at Garber. He also conducted, during this period of time, a general merchandise business and was the only merchant or storekeeper in the village. He sold in his business coal, farm implements, dry goods, boots and shoes, groceries and other merchandise. He purchased grain for appellee at prices directed to be paid by the latter and paid for the same by drafts drawn upon appellee which specified upon the face thereof the amount and kind of grain purchased and the price paid for the same and were always signed with the name "John C. Meyer, agent." He never signed any of the drafts in the name of American Hominy Company or Suffern-Hunt Mills. Meyer testified that many of the farmers from the surrounding neighborhood traded with him at his store on credit and that frequently, when he purchased grain from the farmers having a credit account with him in his store, he settled the store accounts with the parties from whom he had purchased the grain by giving credit on the purchase of the grain for the amount of the farmers' store bills and that he then drew drafts on appellee signed by his own name as agent and repaid himself for the amount of goods which he had sold to the farmers and which he had settled on his own account, and that the agent of appellee operating the Suffern-Hunt Mills knew of these transactions. The officers of the Suffern-Hunt Mills deny that they had any knowledge Meyer pursued such methods. Meyer was required by appellee to and did make daily reports, or at other stated intervals, of the amount and kind of grain that had been purchased by him for appellee and also the amount of grain that

had been shipped by him and the amount on hand. Meyer testified also that the grain for which three of the drafts were drawn was purchased from the tenants of their respective landlords; that the grain was actually delivered by the tenants; that he drew the drafts in the names of the tenants; and that he himself settled with the landlords either through merchandise bought by the latter at his store or by payment to them out of his own funds.

It is undisputed, however, that the four drafts in question were never delivered by Meyer to the respective payees named therein, but that Meyer himself indorsed the names of the payees on the backs of the respective drafts and delivered the same to the commission firm of James E. Bennett & Company in payment of transactions covering his personal deals with said firm. In due course of time, these drafts were delivered to appellant for collection and were paid by appellee.

It is the contention of appellee that the indorsement of the respective payees' names were forgeries and that appellant, by presenting said drafts, warranted the genuineness of the indorsements thereon, and that when a drawee pays a draft where the payee's name is forged, there is no consideration for such payment and he may recover the money paid. Appellant claims that appellee has no right to recover because the respective payees in the drafts were fictitious persons since the drafts were never intended to be delivered to the payees therein named nor was it ever intended by Meyer, the drawer of the drafts, that said payees were to have any interest therein and that said drafts were consequently payable to bearer. Section 9, par. 27 of the Negotiable Instruments Law (chapter 98, Hurd's Rev. St. 1917, J. & A. ¶ 7648) provides that a negotiable instrument is payable to bearer. "3. When it is payable to the order of a person known to the drawer or maker to be fictitious or non-existent,

or of a living person not intended to have any interest in it.''

Appellee admits the force of this statute, but insists that in case of drafts drawn by an agent, if the authority of the agent to draw is broad enough to authorize him to draw bearer paper, his intention in making the paper payable to a fictitious person, and therefore payable to bearer, will control; but, if he has no authority to issue bearer paper, his fraudulent intention to issue bearer paper by making it payable to a fictitious person will not be imputed to his principal and will not control, and the indorsement of the fictitious payee's name under such circumstances will amount to forgery. It is also insisted that the burden of proving Meyer's authority as agent to draw bearer paper was upon appellant and not upon appellee.

Very able and forcible arguments have been advanced by counsel for both appellant and appellee in support of their respective conclusions of the law applicable to the facts in this case, but our opinion is that the rule as announced in the case of *Bartlett v. First Nat. Bank of Chicago*, 247 Ill. 490, must control our decision in this case. The facts appearing in that case are very analogous to those shown by the record in the case at bar. The principal distinction between the facts in the *Bartlett* case and those in the case at bar is that the drawee in the *Bartlett* case had known for a considerable time that its agent, Walsh, the drawer of the drafts, had been in the habit of drawing the same in favor of fictitious persons as payees and indorsing their names on the backs thereof. It is for this reason that counsel for appellee most strenuously insist that the rule as announced in the *Bartlett* case should not be applied to the case at bar. It is true that the court in the *Bartlett* case applied the doctrine of estoppel from the facts there presented, and in substance held that where one of two innocent persons must suffer loss by reason of the wrongful act of an-

other party, the one who has made it possible by his own negligence, for the other party to commit the wrongful act, must stand the loss, and when a grain company knowingly permits its agent, although forbidden by it to do so, to draw drafts on the company payable to farmers who have delivered grain and indorsed the names of the payees himself, it must, as against the bank having no notice of the facts, stand the loss resulting from the agent's misconduct. But this was not the only ground on which the judgment in that case was affirmed. The court, after holding that the drawee could not recover on the ground of estoppel heretofore mentioned, proceeds to give another reason by which the drawee was precluded from recovery. The court said: "The drafts drawn by R. L. Walsh in the name of the appellants against themselves were all made payable to some person who resided near Reddick or bearer, and in the sense that there were such individuals as payees, the payees named in the drafts were not fictitious persons. At the time, however, Walsh drew said drafts, he did not intend that the persons whose names he inserted as payees in said drafts should have any interest in said drafts, or that said drafts should ever be delivered to said payees, or that said payees should indorse said drafts in order to receive payment therefor or for the purpose of negotiating the same. In the eye of the law, therefore, the payees named in said drafts were not bona fide payees, but mere fictitious persons. Said drafts were therefore, in law, payable to bearer, and were transferable, therefore, by delivery, and upon their receipt by the appellee payment thereof could be enforced against the appellants by the First National Bank of Chicago without claiming through the said forged indorsements but as the holders of negotiable paper made payable to bearer.    *    *    * The First National Bank did not, therefore, make out its title to said drafts through a forged indorsement,

472 APPELLATE COURTS OF ILLINOIS.

American Hominy Co. v. Nat. Bk. of Decatur, 215 Ill. App. 464.

and appellants could not, therefore, recover back the money paid to the bank on said drafts.

"Numerous other grounds are urged in support of the judgments of the trial and Appellate Courts, but the two grounds herein considered are so conclusive against the right of appellants to recover upon the undisputed evidence, that we do not think it necessary to consider the other grounds urged in the briefs."

The proofs in the case at bar show that Meyer, as agent for appellee, had authority from the latter to draw drafts on it in favor of the farmers in payment for the grain purchased by him from them, and that this authority had existed for about 15 years; that such drafts, when presented to appellee, were universally accepted and paid by it. No proof was introduced to show that this authority was limited in any way or that Meyer had no authority to draw drafts payable to bearer. In regard to the drafts in controversy, it is conceded that Meyer never had any intention that the payees named therein should have any interest in the transaction and they were never delivered to the payees by Meyer. Under the plain wording of the statute and the authority of the *Bartlett* case, these drafts were payable to bearer, and appellant, by presenting them for payment, did not warrant the genuineness of the indorsements thereon.

The judgment is reversed.

*Reversed with finding of facts.*

Finding of facts. The court finds that each draft in question was payable to the order of a person not intended by Meyer, the drawer, to have any interest in it, or that it should ever be delivered to the payee named therein, or that the payee should indorse said draft in order to receive payment therefor or for the purpose of negotiating the same.