## HARTFORD ACCIDENT & INDEMNITY CO. v. FIFTH–THIRD UNION TRUST CO.

### No. 8109.

Circuit Court of Appeals, Sixth Circuit.

May 15, 1940.

Robert Adair Black, of Cincinnati, Ohio, for appellant.

Joseph S. Graydon, of Cincinnati, Ohio (Joseph S. Graydon, Joseph L. Lackner, Wm. A. McKenzie, and Maxwell & Ramsey, all of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

In August, 1933, Albert Keniston sustained personal injuries alleged to have been caused by the negligent operation of a motor truck owned by Charles Heyde, insured by the Phœnix Indemnity Company, which ultimately paid Keniston $7,500 in settlement. Before Keniston was paid, however, Harry Neal Smith, an agent and adjuster for the Phœnix Company, fraudulently obtained $6,000, by collecting through appellee a draft he had drawn on the Phœnix Company payable to Keniston. Appellant, pursuant to contract to indemnify the Phœnix Company against loss by forgery of employees, paid it $6,000, whereupon the Company assigned to appellant its rights against appellee. Appellant then brought suit to recover on the theory that the Phœnix Company paid the draft under mistake of fact.

It appears that Smith for approximately fifteen years before Keniston's claim arose had had local charge of investigating claims and defending litigation against the Phœnix Company. He had similarly represented other insurance companies,—at one time as many as fourteen. The Phœnix Company had entrusted him with a book of draft forms, and had authorized him to draw a draft for $6,000 in settlement of Keniston's claim. Because he had previously done business with appellee, he was known to some of its officers and to

Mr. Eckermeyer, the teller who received the draft in question for collection.

There had been correspondence concerning the Keniston claim, and Smith had wired on January 2, 1934, suggesting a settlement of $7,150, to which the Phœnix Company replied that $6,000 was its limit. No agreement had been reached, however, on January 29, when Smith drew a draft on the Phœnix Company for $6,000, payable to the order of "Albert Kenniston," which he had no intention that Keniston should receive. The draft contained a statement that, when properly endorsed, it constituted a release of all claims against Heyde on account of the August, 1933, accident. Smith endorsed the name "Kenniston" upon the draft and had one of his employees, Robert E. Jones, endorse and list it for deposit. When they presented the draft at Mr. Eckermeyer's window, a conversation ensued in which Eckermeyer inquired who Keniston was, what the money was for, why they were collecting it this way, and why it was being deposited in Jones' account. Smith said he was collecting it at Keniston's request, because he had handled the draft and "Keniston had no bank account, no means of collecting this money, and that he desired to collect it and receive it personally and not have the draft in his possession." Eckermeyer told them they could not have any part of the money until the draft was collected in New York and, having verified the account, in which there was at the time a credit of only a few cents, entered the amount in Jones' deposit book. Smith and Jones then walked to the middle of the room, and Jones drew a check for $5,900 on appellee, payable to the order of Smith, it being understood that $100 was to be retained by Jones as compensation for his services. On the same day, and on a letter-of-advice form provided by the Phœnix Company, Smith reported that the draft had been drawn in settlement of Keniston's claim.

Appellee endorsed the draft: "Pay to the order of any Bank, Banker or Trust Company, Prior restrictive endorsements guaranteed," and forwarded it through the Chemical Bank and Trust Company for collection. About seven days later Smith collected his check. Some months afterward, the Phœnix Company discovered Smith's fraud and demanded repayment from appellee, which was refused. The Company finally settled with Keniston for $7,500 and collected $6,000 from appellant, who now sues as its assignee.

At the close of all the evidence, each party moved without reservation for a directed verdict. The Court thereupon withdrew the case from the jury, made special findings of fact and conclusions of law, and entered judgment for appellee.

Appellant does not contend that the Phœnix Company was a holder in due course, nor does it assert any right arising out of appellee's endorsement. Its claim is based solely upon the equitable duty to refund money paid under mistake of fact. Appellee assails this claim by asserting that Smith's intention not to deliver the draft to Keniston made it payable to a fictitious payee and, in legal effect, to bearer. Inherent in this position is the assumption that there can be no recovery on the theory of payment under mistake of fact if the draft is payable to bearer, because retention of the money is not inequitable. Brannon's Negotiable Instruments Law, Sixth Edition, 331. See Hackensack Trust Co. v. Hudson Trust Co., Sup.Ct., 189 N.Y.S. 36, affirmed, 207 App.Div. 897, 202 N.Y.S. 928.

If the draft in question is payable to bearer, it is because Smith is its drawer, or because his intention is imputed to the Phœnix Company, though it is urged that his special authorization was only to draw a draft payable to Keniston in settlement of his claim. Section 9(3) of the Negotiable Instruments Law [Ohio General Code, § 8114(3)] provides that "The instrument is payable to bearer * * * 3. When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable." Appellee contends that, under the only construction permitted by this language, the knowledge and intention of Smith controls. Had Smith been authorized to draw generally upon the Phœnix Company, or had he added to his signature as drawer a designation of agency, authority is ample that his intention would control. See Snyder v. Corn Exchange Nat. Bank, 221 Pa. 599, 70 A. 876, 128 Am.St.Rep. 780; Childs v. Empire Trust Co., 2 Cir., 54 F.2d 981; American Hominy Co. v. Nat. Bank of Decatur, 294 Ill. 223, 128 N.E. 391. See also Brannon, op.cit., 214; 30 Yale Law Journal 297. There is some difference of opinion as to whether an agent, who has some, but not general,

764

authority to draw upon his principal, may, without express authorization, make an instrument payable to bearer by naming a fictitious payee. Bartlett v. First Nat. Bank, 247 Ill. 490, 93 N.E. 337; American Hominy Co. v. Nat. Bank of Decatur, supra; United States Cold Storage Co. v. Central Mfg. Dist. Bank, 343 Ill. 503, 175 N.E. 825, 74 A.L.R. 811; Brannon, op. cit., 215; 30 Yale Law Jour. 297.

■ If Smith's intention did not make the draft payable to bearer, it would follow that the endorsement of Keniston was a forgery and appellant, as assignee, could recover, under the general rule that a drawee has a right to the return of money paid when the payee's endorsement is forged. But this rule obviously is not applicable when the instrument at its inception is payable to bearer, and it is so payable when the drawer knowingly names a fictitious or non-existent person as payee and is responsible for negotiation.

■ It is undisputed that Smith had authority to draw and deliver a draft for $6,000 in settlement of Keniston's claim, and we are of the opinion that the Phoenix Company is bound by his act. In Snyder v. Corn Exchange Nat. Bank, supra, 221 Pa. at page 605, 70 A. at page 878, 128 Am.St.Rep. 780, concerning a general agent who had drawn checks payable to persons not intended to receive them, the Court said: "By conferring this general power upon Greenfield, the appellant made it possible for him to abuse it, and, having been abused by him, the principal now asks that another, the bank which innocently paid the checks, and not he, shall bear the consequences of the fraud of the agent whom he trusted." We are of the opinion that conferment of a limited power upon an agent cannot be an absolute guarantee against abuse. In the light of the fact that Smith was known to appellee as a lawyer of integrity, who had represented the Phoenix for many years in the important matters of investigating, settling and defending claims, it could not have been expected to sense the suggested limitation upon his power. Litchfield Shuttle Co. v. Cumberland Valley National Bank, 134 Tenn. 379, 183 S.W. 1006; Coggill v. American Exch. Bank, 1 N.Y. 113, 49 Am. Dec. 310. Negotiable Instruments Law, § 65.

▪■ Appellant relies upon Hartford Accident & Indemnity Co. v. The First National Bank, 11 O.O. 329 (Ohio Court of Appeals, Hamilton County), a case arising out of another fraud perpetrated by Smith, similar to the case at bar. There was substantial evidence in that case, however, that the collecting bank had not exercised reasonable care, and the Court, sitting without a jury, found that it would be inequitable, under those circumstances, to permit the bank to retain the money received. In the case at bar, the District Court, upon substantial evidence, found that appellee exercised all the care that could reasonably be required under the circumstances. We agree with its conclusion that appellee's retention of the proceeds of the draft is not inequitable.

Judgment affirmed.