Philip Gruner & Bros. Lumber Co. *v*. First Nat. Bank *et al.**

Same *v*. Citizens' Nat. Bank *et al.*

(In Banc. June 7, 1926.) Suggestion of Error Overruled July 22, 1926.)

[109 So. 274. Nos. 25235, 25247.]

1. Bills and Notes. *Where bank purchases draft indorsed by drawer, and bearing ostensible payee's acknowledgment of its receipt in payment for lumber, which proves to be a forgery, and bank guarantees all prior indorsements, bank is liable to drawee for money paid thereon.*

Where a bank purchases a draft from the drawer, payable to a named person, and indorsed on the back, "We accept this draft as an advance payment on car 21348 M. K. T. By Burkes Bros. Lum-

ber Company, per E. G. Burkes," and it is also indorsed by the drawer, and the bank guarantees all prior indorsements, and it is forwarded for collection and paid, and turns out to be a forgery, the bank is liable to the drawee for the money so paid on such guaranteed indorsements.

2. PRINCIPAL AND AGENT. *Where agent is employed to buy lumber, with authority to draw draft indorsed by seller for percentage of purchase money, and without authority to draw draft otherwise, persons dealing with agent are chargeable with notice of extent and scope of agency.*

Where a firm or corporation employs an agent to buy lumber with authority, after the approval of the order, to draw a draft for 80 per cent of the purchase money, the draft being indorsed by the seller of the lumber, and without authority to draw draft otherwise, the persons dealing with the agent are chargeable with notice of the extent and scope of the agency.

3. GUARANTY. *Where bank purchased draft, and guarantees all prior indorsements, which included indorsement of drawer and forged indorsement of payee, and offers it for collection, it cannot complain of failure to give notice of forgery promptly on discovery thereof, being bound by its contract of guarantee, and chargeable with notice of facts.*

Where a bank purchases a draft under circumstances as stated in the first syllabus, it cannot complain of failure to give notice of the forgery promptly upon the discovery thereof. Having guaranteed the indorsements to be genuine, it is bound by its contract, and chargeable with notice of the real facts.

ANDERSON AND COOK, JJ., dissenting.

---

*Corpus Juris-Cyc. References: Agency, 2CJ, p. 562, n. 81; Banks and Banking, 7CJ, p. 596, n. 16; Guaranty, 28CJ, p. 983, n. 54.

APPEAL from circuit court of Lauderdale county.
HON. C. C. MILLER, Judge.

Actions by Philip Gruner & Bros. Lumber Company against the First National Bank and others, and against the Citizens' National Bank and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

*R. M. Bourdeaux,* for appellant.

Philip Gruner & Brothers Lumber Company is a corporation domiciled at St. Louis, Missouri, and having its principal business office at that place. During the years 1920 and 1921, and some four or five years prior thereto, it was engaged in the business of buying lumber in East Mississippi and West Alabama. For this purpose they employed one J. G. Roy as agent to buy lumber for it and the said Roy maintained an office in Meridian, Mississippi.

The method of doing business was for Roy to get in touch with the small mills in East Mississippi and West Alabama and buy lumber from said mills for appellant; and when the lumber was shipped by the small mills, Roy had authority to draw a draft in favor of the seller of the lumber on the appellant for eighty per cent of the invoice value of the lumber. The remaining twenty per cent was remitted after receipt of the lumber and inspection.

Burkes Brothers Lumber Company operated a saw mill at Walnut Grove, in Scott county, Mississippi, and prior to September 16, 1920, had sold to the appellant a good many cars of lumber through Roy by the method above set out. At this time; to-wit, September, 1920, Burkes Brothers Lumber Company had an order through Mr. Roy for two cars of lumber, and appellant was expecting these two cars to be shipped at any time, and were anticipating draft on it for eighty per cent of the invoice price of same.

On September 16, 1920, Roy drew draft in question on Philip Gruner & Brothers Lumber Company, payable to the order of Burkes Brothers Lumber Company for five hundred dollars. The said Roy never delivered said draft to the payee at all, but the drawer himself presented the same to the Citizens' National Bank of Meridian after the said draft had received the O. K. of J. L.

Hart. The Citizens' National Bank paid the amount of the draft to J. G. Roy, the drawer of same.

Burkes Brothers Lumber Company never shipped to appellant any such car of lumber as indicated on said draft, and the Burkes Brothers Lumber Company never received said draft, nor authorized Roy to endorse its name thereon. The truth of the business is that Roy forged the name of the Burkes Brothers Lumber Company to said draft and appropriated the proceeds thereof to his own use and Burkes Brothers Lumber Company never received any part of the same; in fact, this company did not know of any such draft until long after the forgery was discovered.

Appellant herein discovered the forgery of the name of the payee on September 27, 1920, and had its attorney to notify the Citizens' National Bank and make demand on it the latter part of November or first of December, also immediately notifying the collecting bank in St. Louis. After the Citizens' National Bank refused payment, appellant instituted this suit against the Citizens' National Bank.

The trial court refused a peremptory instruction for the plaintiff and granted a peremptory instruction for the defendant, judgment being entered accordingly, from which judgment this appeal is prosecuted.

We feel that we can confidently state that the following facts are undisputed:

(1)  The payee's name, Burkes Brothers Lumber Company, was forged and the negotiation of the draft by Roy was wholly unauthorized by the payee therein.

(2)  The Citizens' National Bank cashed the draft when it knew that it was cashing the draft for the drawer and not for the payee.

(3)  The draft on its face clearly indicated that the drawer of same had no funds of his own account in the hands of the drawee, and further that the draft was given to the payee for goods to be delivered by the payee to the drawee.

(4)   The Citizen's National Bank not only generally endorsed said draft, but said draft came to the drawee with a special and explicit endorsement of the Citizens' National Bank that it guaranteed the genuineness of all prior endorsements, which, of course, included Burkes Brothers Lumber Company.   This guarantee was absolute and unconditional. This contract should be enforced like any other.  *Second National Bank of Pittsburgh* v. *Guaranty Trust Co.,* 56 Atl. 72; *Yalesville Banking Co.* v. *Fourth Nat'l Bank,* 72 S. E. 528.

(5)   At the time the drawee paid this draft it had no notice or knowledge that the endorsement of the payee's name was a forgery.

(6)   Within a reasonable time after the discovery of the forgery, that is, about two months—"from September 27, 1920, to the latter part of November or first of December, 1920"—the drawee demanded payment from the Citizens' National Bank.

With these undisputed facts before the court, we shall not burden our brief with the citation of numerous authorities, but shall content ourselves by simply referring the court to 3 R. C. L., p. 1296, and the leading and well-considered cases therein cited.

The Citizens' National Bank was negligent in cashing a draft for the drawer instead of the payee.   The drawee had the undoubted and absolute right to presume that its customer, the Burkes Brothers Lumber Company, had received the proceeds of the said draft and that if the said payee had not so received the proceeds, the Citizens' National Bank stood between the drawee and any loss.

The drawee was in St. Louis, Missouri.   The Citizens' National Bank and the payee were in Mississippi.   The drawee was expecting a draft in favor of the payee under their contractual relations.   The Citizens' National Bank guaranteed to the Philip Gruner & Brothers Lumber Company that its customer, Burkes Brothers Lumber Company, had endorsed said draft.

*Baskin, Wilbourn & Miller,* for appellees.

We submit that under the facts of this case appellant cannot recover. The draft in this case was payable to bearer, as a matter of law, and it is immaterial that the signature of Burkes Brothers Lumber Company on the back of the draft, which appellant contends was an endorsement, was a forgery.

The Negotiable Instruments Act distinctly specifies that an instrument is payable to bearer ''when it is payable to the order of a fictitious or non-existing person and such fact was known to the person making it so payable.''

Burkes Brothers Lumber Company, under the facts in this case and the authorities bearing on the question, was clearly a fictitious person within the meaning of the above provision of the Negotiable Instruments Act. The point is clearly and definitely ruled in the following cases: *Snyder* v. *Corn Exchange Nat'l Bank,* 221 Pa. 599; *Phillips* v. *Mercantile Nat'l Bank of New York,* 140 N. Y. 556, 35 N. E. 982; *Hortsman* v. *Henshaw,* 13 L. Ed. (U. S.) 653.

As additional authorities to show that this instrument was payable to bearer and the endorsement of Burkes Brothers Lumber Company was mere surplusage, and did not affect the proposition one way or the other. See the following authorities: *Bank of England* v. *Vaglianao Bros.* (1891), A. C. 107, 60 L. J. Q. B. N. S. 145, 64 L. T. N. S. 353, 39 Week Rep. 657, 55 J. P. 676, 3 Eng. Rul. Cas. 695; *Trust Co. of Am.* v. *Hamilton Bank,* 127 App. Div. 515, 112 N. Y. Supp. 84; *Snyder* v. *Corn Exchange Nat'l Bank,* 221 Pa. 599, 128 A. S. R. 780, 70 Atl. 876; *Bartlett* v. *First Nat'l Bank,* 140 N. Y. 556, 23 L. R. A. 584, 37 A. S. R. 596, 35 N. E. 982; *Clutton* v. *Attenborough & Sons* (1897), A. C. 90, 66 L. J. Q. B. N. S. 122, 75 L. T. N. S. 556, 45 Week. Rep. 276; *Coggill* v. *American Exchange Bank,* 1 N. Y. 113, 49 Am. Dec. 310; *Phillips* v. *I. M. Thurm,* 18 C. B. N. S. 694,

144 Eng. Reprint, 617, 11 Jur. N. S. 489, 13 Week. Rep. 750; *Kohn* v. *Watkins,* 26 Kan. 478, 47 Am. Rep. 501, 2 Pac. 580; *Farnsworth* v. *Drake,* 11 Ind. 101; *Blodgett* v. *Jackson,* 40 N. H. 21; *Re: Pendleton Hardware Co.,* 24 Ore. 330, 33 Pac. 544; *American Homing Co.* v. *Millikin Nat'l Bank,* 273 Fed. Rep. 550; *Norton* v. *City Bank & Trust Co.,* 294 Fed. Rep. 839.

Appellant made the perpetration of fraud possible, by trusting J. G. Roy to draw drafts on it and it would be highly inequitable to allow appellant to recover of Citizens' National Bank for the fraud of its own agent.

In this case it is clear that the draft was forwarded to a bank in St. Louis for collection only. Therefore, Citizens' National Bank did not transfer this draft to any one who became the holder and owner of it for value in due course.

There was clearly a failure to notify the bank of the fraud or forgery in this transaction within a reasonable time. The tendency of the modern decisions seems to be that where there has been an unreasonable delay in discovery of forgery and giving notice, it will bar a recovery by the payer. *First National Bank* v. *Ricker,* 71 Ill. 439, 22 Am. Rep. 104; *Continental Nat'l Bank* v. *Metropolitan Nat'l Bank,* 107 Ill. App. 455; *McCall* v. *Corning,* 3 La. Ann. 409, 48 Am. Dec. 454; *Bank of St. Albans* v. *Farmers & M. Bank* (1838), 10 Vt. 141, 33 Am. Dec. 188; *Glowster Bank* v. *Salem Bank* (1820), 17 Mass. 33.

In case of an unreasonable delay in discovering the forgery, the holder is not bound to show that he has been injured. The delay itself imports injury, and the law presumes it. *Deposit Bank* v. *Second Nat'l Bank* (1888), 10 Ky. L. Rep. 350, the same ruling being made in the supreme court in 1890 in 90 Ky. 10, L. R. A. 849, 13 S. W. 339.

There is no proof of either actual negligence or bad faith attributable to the appellee bank. No circumstances are shown which prevent the appellee bank from

retaining the money in good conscience. It is very clear in this case that the appellee bank did not receive the proceeds of an instrument to which another held a better claim or title. It is equally clear that appellant could never be made to pay the draft a second time, nor to any other person nor to Burkes Lumber Company, because Burkes Brothers Lumber Company was a mere fictitious payee to whom the draft was never delivered and who never had any title to it whatever. See *U. S. v. Chase Nat'l Bank,* 64 L. Ed. U. S. Ct. Rep. 675, reported in lower court 241 Fed. 535, 250 Fed. Rep. 105.

We submit that this case ought to be affirmed.

*Amis & Dunn,* also, for appellees.

On any possible theory of the law applicable to the case, the judgment of the circuit court was correct as to the defendant, J. L. Hart. J. L. Hart gave notice under the general issue that his connection with the draft was merely an accommodation indorser; that he received no consideration therefrom and that he was discharged by the plaintiff's payment of said draft. He further plead that he was not seasonably notified by the plaintiff after the alleged discovery of the alleged forgery of the indorsement of the payee of the draft, and that he had been discharged from his liability to the plaintiff, as an indorser, by reason of the plaintiff's delay and failure to notify him of the alleged forgery.

The proof utterly fails to show that Hart received any money from the plaintiff or any other person connected with the transaction. He was an innocent party in the premises and not having received anything of value from the plaintiff, his lack of liability to the plaintiff is too clear for argument.

The proof fails to show that either Hart or the appellant bank had notice or knowledge that J. G. Roy, who drew the draft, did not have funds to his credit with the Phillip Gruner & Brothers Lumber Company on which

the draft was drawn at the time the bank obtained the same from Roy.

The rule, as we understand it, is that when there is nothing in the bill or draft itself to put the holder upon inquiry to the contrary, he has the right to assume that the draft is drawn upon funds to the credit of the drawee with the drawee. We have not been able to find a case decided by our court on the exact point. But the question was considered and decided by the supreme court in the United States in *Hortsman* v. *Henshaw,* 13 L. Ed. 653, as long ago as 1850.

We submit that if as a matter of law the draft is question is to be presumed to have been paid from funds of Roy in the hands of the plaintiff or upon his credit, it is wholly immaterial, so far as the bank, an innocent holder, is concerned, whether the name of the payee was forged by indorsement upon the draft or not. Especially is this true since the drawer himself negotiated the draft with the payee's name indorsed thereon. He is estopped to deny the genuineness of the signature of the payee's indorsement; and if in legal contemplation the draft was paid from his funds, or upon his credit, the plaintiff, drawee, has no ground to complain. This is the case here and the rule announced in *Hortsman* v. *Henshaw, supra,* is directly in point, and, we submit, is sound law.

The record in the case shows that Hart never received any notice that the indorsement of the draft of the payee was forged, or that there was any irregularity connected with it until suit was brought many months after the alleged forgery was discovered by the plaintiffs. The neglect of the plaintiff to give him seasonable notice of the defect would alone discharge him from liability.

Argued orally by *R. M. Boudeaux,* for appellant, and *R. E. Wilbourn,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

These two cases are governed by the same principles, and largely by common facts.

The case of *Philip Gruner & Bros. Lumber Co.* v. *Citizens' National Bank et al.*, No. 25235, was a suit against the bank and J. L. Hart as indorsers and guarantors of a draft drawn by J. G. Roy on the appellant in favor of Burkes Bros. Lumber Company in the following words:

"The Central National Bank of St. Louis.

"St. Louis, Mo., 9—16—1920.

"At sight pay to the order of Burkes Bros. Lbr. Co., Forest, Miss., R. F. D. No. 1, $500.00, five hundred and no/100 dollars, value received, and charge to the account of J. G. Roy.

"PHILIP GRUNER & BROS. LBR. Co.,
"ST. LOUIS, Mo."

Written across the back of the draft were these words:

"We accept this draft as an advance payment on car 21348 M. K. T. By Burkes Bros. Lbr. Co., per E. G. Burkes."

The draft was presented by Roy to the bank for payment, and the bank agreed to pay the draft, if J. L. Hart would indorse it. Roy then indorsed the draft, secured Hart to O. K. and indorse it, and presented it to the bank, who paid the money to Roy. The bank indorsed the note as follows:

"Pay any bank, banker or trust company (all prior indorsements guaranteed). September 16, 1920. Citizen's National Bank, Meridian, Miss. 85—21. Paul Brown, Cashier, 85—21."

The draft was forwarded to the correspondent of the Meridian bank at St. Louis, was presented to the appellant, and paid.

As a matter of fact, the draft was a forgery; no lumber having been bought from Burkes Bros. Lumber Company on this occasion and Burkes Bros. Lumber Company being a stranger in fact to this transaction. The

appellant discovered this about September 27, 1920, but did not immediately make any demand on the Meridian bank or on Hart for payment. Such demand was made of them in the latter part of November or the first of December, 1920. Philip Gruner & Bros. Lumber Company notified the collecting bank of St. Louis of the forgery promptly. The appellees refused to pay, and this suit was brought.

While these suits were pending, some negotiations took place between the appellant and Mrs. Roy, the wife of J. G. Roy, and about six hundred twenty-five dollars was paid by Mrs. Roy to the appellant. There was some dispute about the application of this sum of money received from Mrs. Roy; the appellant contending it was applied on the other indebtedness owing the appellants by Roy, while Mrs. Roy contended that the amount paid was to be applied to the payment of these drafts. The circuit court gave a peremptory instruction in favor of the banks and J. L. Hart.

In the other case, *Philip Gruner & Bros. Lumber Co.* v. *First National Bank, et al.,* No. 25247, a similar draft was made out by Roy payable to G. W. Luke Lumber Company, of Noxapater, Miss., for four hundred forty-five dollars, which was indorsed:

" We accept this draft as an advance payment on car No. 17665 W. P. By G. W. Luke Lumber Co., per G. W. Luke."

It was indorsed:

"O. K. J. L. Hart, J. G. Roy. Pay to the order of any bank, banker, or trust company. (All prior indorsements guaranteed.) Aug. 6, 1920. First National Bank of Meridian, Miss., and the money thereon paid to J. 85—20."

This draft was presented to the First National Bank of Meridian Miss., and the money thereon paid, to J. G. Roy, and the draft was forwarded, with the above indorsement, to the bank's correspondent in St. Louis, Mo., where it was paid on presentation. Luke had sold the

carload of lumber through Roy, and the lumber in this
case was actually shipped by the G. W. Luke Lumber
Company, but Luke knew nothing of the draft, and
the forgery in this case was not discovered until several
months later, when the Gruner Bros. Lumber Company
sent a statement of the transaction to Luke, and included
in that statement the amount paid on the draft here in-
volved.    Luke contended he had never received such
money, and insisted on payment for the car of lumber
shipped, which payment was made after discovery of the
forgery of the drafts herein referred to.

It appears further, that J. G. Roy had been buying
lumber from Burkes Bros. Lumber Company under an
arrangement between him and the Gruner Bros. Lum-
ber Company whereby he was authorized to send a pro-
posed sale to the St. Louis office of the Gruner Bros.
Lumber Company, as to which, when approved by them,
he was permitted to make out a draft upon the Philip
Gruner Bros. Lumber Company in favor of the sellers
for eighty per cent. of the purchase money.    Such draft
was to be indorsed on the back by the seller of the lumber
and the car number of the car of lumber in the manner
above indicated and signed by the buyer acknowledging
receipt of the money in part payment of the purchase
money for the lumber.    Roy did not have power to draw
drafts generally or to buy without the approval of the
appellant according to the appellant's evidence of Roy's
authority, which was the only specific evidence relating
to such authority in the record.    As stated above, the
court granted a peremptory instruction in favor of the
appellees.

It is familiar learning that parties dealing with an
agent must know the extent of his authority.    It was
evidently the theory of the court below that the failure
to promptly notify the banks at Meridian and the in-
dorsers on the note of the forgery constituted negligence,
releasing the banks of their obligations arising from their
indorsement and guaranty.

143 Miss.—30.

We think that, when the indorsements of the payees of the draft were guaranteed by Hart and by the banks, it constituted a contract under which they were not entitled to a notice of forgery. They undertook to guarantee that the indorsements of all of the parties on the draft were genuine, and that the parties dealing with it after such guaranty were entitled to rely upon that contract, and that there was no such duty devolving upon the appellant to give notice of what they had expressly guaranteed to be genuine was not so in fact. Furthermore, if appellant was under any duty in that regard, the time was not unreasonably long, and no change of situation or detriment to the bank and Hart is shown to have resulted from delay in giving such notice.

It further appears that another draft had been forged by Roy and sold to one of the banks, and, when that forgery was discovered, the appellant wrote to the bank involved in that draft notifying it of the discovery of the forgery, and stating:

"We, of course, have paid this draft and taken care of it, so your bank is out nothing."

We do not think this other transaction affected the present one. If the appellant had insisted on the payment of the other draft, without a waiver of his rights, it could doubtless recover thereon.

Appellee insists that under the Negotiable Instrument Act, par. 9 (Hemingway's Code, section 2587), an instrument is payable to bearer when it is payable to the order of a fictitious or nonexistent person, and that such fact was known to the person drawing the same so this controls here, and makes the draft here payable to the fictitious person, and, therefore, to bearer under this section. The record shows that the appellant was buying, and had bought, lumber from the payees of the draft here involved on prior occasions, and the indorsements required under these drafts were not intended to be fictitious, but to be actual transactions in payment for actual lumber bought, and were not, therefore, pay-

able to a fictitious person within the rule above provided. Therefore, the cases of *Snyder* v. *Corn Exchange National Bank,* 221 Pa. 599, 70 A. 876, 128 Am. St. Rep. 780; *Hortsman* v. *Henshaw,* 11 How. 177, 13 L. Ed. 653, and other cases holding in accordance with them, are not here applicable.

We therefore think the judgment of the court below was erroneous, and the cause is reversed and remanded.

*Reversed and remanded.*

ANDERSON and COOK, JJ., dissent.