## CENTRAL TRUST CO et v EUREKA- SECURITY FIRE & MARINE INS CO

Ohio Appeals, 1st Dist, Hamilton Co

Decided Jan 21, 1935

Wm. J. Rielly, Cincinnati, Ernst, Cassatt & Cottle, Cincinnati, and Maxwell & Ramsey, Cincinnati, for plaintiffs.

Harry Neal Smith, Cincinnati, and Fred L. Maier, Cincinnati, for defendant in error.

## OPINION

By HAMILTON, PJ.

The first proposition is, that The Fourth and Central Trust Company upon receipt of the draft, notified the insurance company and that company, after examination, took up the draft by issuing its check therefor. The relation of banker and depositor did not, therefore, exist. The Central Trust Company acted as the agent in collecting and disbursing the fund which the insurance company furnished in payment of the draft.

The Central Trust Company was not, as erroneously designated in the case, the drawee. The draft on its face designates the plaintiff insurance company the drawee, and contains the notation "payable through The Fourth and Central Trust Company, Cincinnati, Ohio."

The relation did not make the bank a guarantor of the validity of the indorsements. The drawee, after the .inspection of the draft, furnished the bank with the funds to pay and assumed the full responsibility for the indorsements when it paid the draft and retained it.

The bank was bound to disburse the fund in accordance with its instructions. These principles are announced in the cases of Armour v Greene County State Bank, 112 Fed. Rep. 631, and **Dodge v Bank, 20 Oh St, 234.**

. We are further of the opinion that the plaintiff insurance company was guilty of laches, which precludes its setting up the claim of forged indorsements. It appears that in the Spring of 1929, it was first made aware of the fraud perpetrated by its Texas agents. It had the draft in its possession at that time. No notice was given to the bank of any claim of fraud or forgery until October 25, 1929, when a letter was addressed to The Central Trust Company. outlining and explaining the fraud prac-

ticed, out of which grew the draft in question. The insurance company did not in that letter demand reimbursement.

If the banks, as a banking proposition, did guarantee the genuineness of the prior indorsements, and were bound thereunder, the banks might have protected themselves as against the original indorser, to-wit: the bank in Texas which first made payment (The North Texas National Bank) which is primarily liable under its indorsement, had prompt notice been given. Prior to the notice, The North Texas National Bank had passed out of existence, and The Union Trust Company of Cleveland was in the hands of a conservator. The draft was never returned by the plaintiff drawee.

In the case of **Van Wert National Bank v First National Bank, 6 C.C., 130**, it was held:

"To shift the loss sustained upon forged commercial paper, the holder must give prompt notice of the forgery, when discovered, and return the check to the party upon whom the loss is sought to be cast."

It has been held that any unreasonable delay, after the discovery of the forgery, in giving notice thereof to the bank, discharges the bank, without regard ordinarily to the question of whether the bank was prejudiced by such delay. In the case under consideration, it was shown that actual prejudice did result to the banks from the delay in giving notice.

Moreover, the real issue in this case grows out of the fraud perpetrated on the company by its own agents.

In the last analysis, to hold in favor of the insurance company in this case would be to hold that the banks, by their indorsement of the draft. insured the principal against fraud perpetrated upon it by its own agents, made possible by the negligence of the principal, the plaintiff in this case.

The policy was issued to Clarence Brooks. True, he did not exist, or if he ever did, he had disappeared, and his name was used for the purpose of fraud. The proof of claim and loss was filed by Clarence Brooks. The draft was made payable to Clarence Brooks. The draft was indorsed by Clarence Brooks. Unless the use of a fictitious name is a forgery, forgery did not exist in this case. E. P. Tally was the real party, but he used in all the proceedings the name "Clarence Brooks." It would therefore appear that the draft was regular, with the exception of the indorsement of Mrs. G. L. Maddox, which is unimportant. It was paid to the person who held the policy, who

claimed the loss, and indorsed by him. The defect concerning the draft is not a forgery in the draft itself, but grows out of a fraud in procuring the draft, and that fraud was committed by the agents of the drawee insurance company. It would be contrary to all principles of equity to permit a recovery in this case and to cause the loss to fall on the bank.

The draft was drawn by an agent on his principal, by authority of his principal, and may be treated as a promissory note. It was drawn as recited on its face: "* * * in full settlement and compromise of all claims and demands against said company for loss or damage sustained September 25, 1928, to property insured under policy No. 62621", which was the policy out of which the whole transaction arose.

It is also a well-settled rule of law that where one of two innocent parties must suffer, through fraud, the loss must fall on the party who made the fraud possible. The plaintiff insurance company was the principal mover in causing the loss, and it may not recover from the other innocent parties, in this case, the banks.

See also: Brannim's Negotiable Instruments, 5th Ed., par. 9, et seq., where many cases bearing on this subject are collated and commented upon.

The judgment will be reversed, and on the facts presented, judgment will be entered here in favor of the plaintiffs in error.

ROSS and MATTHEWS, JJ, concur.