ROYAL INDEMNITY CO. v. FEDERAL RESERVE BANK OF CLEVELAND CINCINNATI BRANCH.

No. 4973.

District Court, S. D. Ohio, W. D.

April 29, 1939.

622

Dolle, O'Donnell & Cash, of Cincinnati, Ohio, for plaintiff.

Squire, Sanders & Dempsey, of Cleveland, Ohio, and Bettinger, Schmitt & Kreis, of Cincinnati, Ohio, for defendant.

DRUFFEL, District Judge.

The above-entitled action was submitted to the court for decision upon the pleadings and stipulations as to relevant and material evidence, from which it appears:

That during the period July 28, 1931, to August 16, 1933, Ralph A. Cable, Longmont, Colorado, was employed by the Union Central Life Insurance Company of Cincinnati, as agent; that as such agent he was authorized to solicit and submit applications for life insurance and to render service to all policyholders in his territory incident to their policies, including the delivery to such policyholders of all checks or drafts of the company made payable to such policyholders; that as such agent there came into his possession forty-seven checks (Exhibits 1–47) issued by the company; that on all of said checks Cable forged the name of the payee, endorsing his own name thereafter on every check except one (Exhibit 25), receiving the proceeds thereof and converting the same to his own use. It also appears that the signature of the policyholders in connection with the loan application and policy loan notes, except in two instances, were forged by Cable; that when applications for increased loans were made, before payment thereon the signatures would be compared with the signatures on the previous applications, but that in the instance of increased loans or new loans no comparisons were made with the genuine signatures of policyholders in possession of the company.

The checks in due course would be cleared through Denver banks, then Chicago, and finally reach the Cincinnati branch of the defendant, Federal Reserve Bank, where they would be stamped "All prior endorsements guaranteed" and presented to the banks upon which they were drawn, being either the First National Bank, the Fifth Third Union Trust Company or the Central Trust Company, all of Cincinnati. After receipt of the cancelled checks from the banks the Union Central Life Insurance Company cashier would verify the regularity of the issuance of the checks but made no effort to verify the genuineness of the signature of the payees of the checks. It appears, too, that the cashier of the Union Central Life Insurance Company knew that his company held forgery bonds issued by plaintiff company covering these transactions.

The Union Central Life Insurance Company discovered the first of the forgeries on or about August 16, 1933, immediately dismissed Cable and, after investigation, made claim against plaintiff under its forgery bonds. On December 10, 1934, it received from plaintiff $4,217.01, in full settlement, and on May 3, 1935, assigned to plaintiff "the benefit, demands and cause or causes of action it * * * has * * * against The Fifth Third Union Trust Company, First National Bank, Central Trust Com-

pany, Cincinnati, Ohio, or any other person * * * for a loss sustained * * * arising * * * out of certain forgeries perpetrated * * * by Ralph A. Cable."

It also appears that although the Union Central Life Insurance Company learned of the forgeries August 16, 1933, and notified plaintiff thereof by way of claiming under its forgery bonds, no notice was given defendant of the forged endorsements until August 28, 1935, when plaintiff's counsel demanded payment of $4,217 on account of loss sustained by plaintiff, seeking recovery by reason of defendant's guaranty of all prior endorsements. Upon defendant's refusal to pay, plaintiff brought its action as appears by its petition herein. In its answer defendant asserted that the Union Central Life Insurance Company was negligent in not comparing the endorsements of payees with the genuine signatures which it had on file; that defendant was prevented from exercising its rights as endorser through failure of said company to notify it of the forgeries for more than two years; that plaintiff being paid to assume the risk of loss resulting from frauds and forgeries of said Ralph A. Cable, defendant being an innocent party, equity does not require the doctrine of subrogation to permit plaintiff to recover a loss which it was paid to assume, etc.

### Findings of Fact

After careful consideration of the evidence, the court finds as a matter of fact:

(1) That the Union Central Life Insurance Company, in dealing with its policyholders through its agents, permitting the personal delivery of dividend and loan checks, in its failure to compare the purported signature on the loan applications and the endorsements of payees on checks with the genuine signature in its possession as shown by the evidence, was careless and negligent, and was therefore directly responsible for the Cable forgeries; that the evidence shows defendant was not negligent in any respect.

(2) That the plaintiff and the Union Central Life Insurance Company were negligent in failing to promptly notify defendant of the Cable forgeries.

### Conclusions of Law

(1) Plaintiff as assignee of the Union Central Life Insurance Company has no rights in this action different from or greater than those of the Insurance Company, its obligee in the forgery bonds, and as such assignee is subject to the same defenses as may properly be urged against that company. National Surety Co. v. Perth Amboy Trust Co., 3 Cir., 76 F.2d 87.

(2) The Union Central Life Insurance Company, by its failure to detect the forged signature on the loan applications and by its continued failure to compare the signatures of the payee on the checks with the genuine signatures in its possession, as shown by the evidence, was solely and wholly responsible for the loss, and leaves this court no alternative but to apply the well-established rule that where one of two innocent persons must suffer loss by the fraud or misconduct of a third person, the one who first reposes the confidence and commits the first oversight, must bear the loss, and plaintiff is estopped from demanding payment herein. McHenry v. National Bank, 85 Ohio St. 203, 97 N.E. 395, 38 L.R.A.,N.S., 1111; Weisberger Co. v. Savings Bank, 84 Ohio St. 21, 95 N.E. 379, 34 L.R.A.,N.S., 1100; Central Trust Co. v. Insurance Co., 50 Ohio App. 308, 198 N.E. 62 (certiorari denied).

(3) The failure of plaintiff and the Union Central Life Insurance Company to advise defendant of the Cable forgeries for more than two years after they were discovered discharges the defendant in this case. Central Trust Co. v. Insurance Co., 50 Ohio App. 308, 198 N.E. 62; Leather Mfrs. Nat. Bank v. Morgan, 117 U.S. 96, 6 S.Ct. 657, 29 L.Ed. 811; United States v. National Exchange Bank, C.C., 45 F. 163. To shift the loss sustained upon forged commercial paper, the holder must give prompt notice of the forgery, when discovered, and return the check to the party upon whom the loss is sought to be cast. Van Wert National Bank v. First National Bank, 6 Ohio Cir.Ct.R. 130.

Counsel for plaintiff specifically argue that it is entitled to recover for breach of contract based upon an express warranty because of defendant's guaranty of all prior endorsements on the checks in question, and insist by reason thereof that the defenses of negligence, estoppel, laches, etc., should not be considered. On this point the Supreme Court, in United States v. Guaranty Trust Co., 293 U.S. 340, 349, 55 S.Ct. 221, 225, 79 L.Ed. 415, 95 A.L.R. 651, say: "The express guaranty of prior indorsements means no more than what is implied by every unrestricted indorsement; namely

that the indorsements were effective to give to the holder a legal title and the right to enforce payment of the check." Thus the Court clearly defines plaintiff's position here and definitely disposes of its broad claims as to its rights by reason of the express warranty.

Plaintiff's counsel also cite Provident Savings Bank & Trust Co. v. Western & Southern Life Insurance Co., 41 Ohio App. 261, 179 N.E. 815 (certiorari denied by Ohio Supreme Court), and insist because of the decision of the Supreme Court in the case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, this court must follow the Provident Bank case. In that case Sadler, an agent of the Western & Southern Life Insurance Company, prepared a number of fraudulent death claims, forged affidavits of physicians, etc., and procured through the insurance company superintendent in Evansville the checks payable thereon, forged the names of the payee and cashed the checks through the banks of that city, which banks, after guaranty of endorsements, forwarded to the First National Bank of Cincinnati who, after guaranteeing previous endorsements, presented them to the Provident Savings Bank, depository of The Western & Southern Life Insurance Company, for payment. Upon suit by the Insurance Company against the Provident, the parties stipulated in part as follows (179 N.E. page 816): "It is further stipulated and agreed that the Provident Savings Bank and Trust Company made no inquiry or investigation as to the genuineness of the signatures of the payees on said checks, but as to the genuineness of said endorsements relied entirely upon the guarantee of the genuineness thereof of the First National Bank, Cincinnati, from which it received the checks * * *."

At the trial the Insurance Company introduced the stipulations and rested; whereupon the defendant attempted to introduce evidence of negligence by the Insurance Company, which the trial court refused. The Court of Appeals, after commenting that the negligence of the superintendent was so gross as to almost justify an inference of collusion with Sadler, upheld the trial court, holding that since the stipulation recited that the bank relied entirely upon the guaranty of the First National Bank, from which it received the checks, it could not introduce evidence that it relied upon anything else. And, continuing, the court said: "Negligence alone on the part of the depositor is not enough. It must be such negligence as is the proximate cause of the bank's action in paying the check, acts constituting negligence upon which it relied to its damage."

Analysis of this case, upon which plaintiff's counsel place such reliance, clearly shows that his claim that the defenses of negligence, estoppel, etc., should not be considered, have no merit, and that this case has no value here, since the issue of negligence was dismissed because of the stipulation.

Plaintiff's counsel also place great emphasis on the case of Insurance Co. of North America v. Fourth National Bank, D. C., 12 F.2d 100 (certiorari denied, 279 U.S. 853, 49 S.Ct. 349, 73 L.Ed. 996), as supporting his position against the defenses of negligence, estoppel, etc. Quoting from plaintiff's brief: " * * * the court carefully considered this question as applied to this very case. At page 102 [of 12 F.2d] the court said: 'I do not perceive that the equitable doctrine ought to apply that, if one of two equally innocent parties must suffer by the act of a third, the loss should be borne by the party through whose fault the injury became possible. The fraud of a trusted agent does not always fix the loss on his innocent principal, as against the third person injured, though the principal was careless. It does so only when the principal has failed in his duty.'

Reference to the last line, in view of the findings of fact, shows that this case does not support counsel's view.

In view of the foregoing this court feels that it is unnecessary to discuss or pass upon the other points raised or to further comment on the many authorities cited, relating to the general subject of endorsement.

Judgment for defendant, with exceptions to plaintiff.